# Supreme Court of Texas

No. 24-0813

In re The State of Texas,

*Relator*

On Petition for Writ of Mandamus

JUSTICE BLACKLOCK, joined by Chief Justice Hecht and Justice Young, concurring in the denial of the petition for writ of mandamus and motion for emergency relief.

Remarkably, the State's presentation to this Court *takes no position* on whether the State Fair of Texas, a private entity, has the legal authority to exclude patrons carrying handguns from the Fair. This may surprise many observers, given that the ostensible purpose of this litigation is to determine whether Texas law entitles law-abiding Texans to carry handguns at the State Fair despite the Fair's recently enacted policy to the contrary. That is a very important question. It is a question on which both law-abiding handgun owners and the operators of the State Fair deserve a clear answer. It is a question to which further litigation may provide a clearer answer. But it is not a question answered—or even addressed—by the State's emergency filings in this Court. This Court cannot possibly order the State Fair to allow

handguns to be carried at this year's Fair when the party seeking that relief does not even argue that Texas law obligates the Fair to do so.

The State Fair of Texas is a private entity that operates the Fair on public land leased from the City of Dallas. Whether Texans have a legal right to carry handguns at a mass public event of this nature is not a question that should ever be in doubt. Law-abiding handgun owners in Texas know that there are certain places where they may not carry their weapon. They need to know—with maximum clarity—whether the State Fair is one of those places. Yet the State's filings *do not even attempt to answer that question.* Instead of arguing that the *State Fair* lacks the authority to prohibit guns at the Fair, the State instead argues that the *City of Dallas* may not promote or enforce the State Fair's prohibition on guns. Assume the State is correct. Assume that section 411.209(a) of the Government Code prohibits the City of Dallas from assisting in the enforcement of, or associating itself in any way with, the State Fair's gun policy. Even if that is true—and it may well be—this would not mean that handgun owners are entitled by law to carry their weapons at the State Fair despite the State Fair's contrary policy. On that pivotal question, the State's filings are conspicuously silent.[1]

---

[1] The State contends that the Fair's gun policy would be unenforceable if the City's police department is prohibited from enforcing it. That is obviously wrong. The Fair intends to hire private security, and the Dallas County District Attorney is not a party to this case. Perhaps the worst possible outcome from all of this would be a court order that sides with the State but actually only enjoins the City of Dallas and its police department based on section 411.209, which is the kind of order for which much of the State's briefing seems to advocate. That order would leave the State Fair's gun policy in place—and expose those who violate it to potential liability at the hands of local government officials who do not work for the City—while giving the

An Attorney General Opinion issued in 2016 was not so silent. It concluded that private parties leasing government-owned facilities cannot make carriage of handguns on their leased property a crime by posting the familiar signage described by sections 30.06 and 30.07 of the Penal Code. Tex. Att'y Gen. Op. KP-0108, at 3 (2016). The AG Opinion went on, however, to address a key question that is entirely unaddressed by the State's filings—whether private parties leasing government property can exclude carriers of handguns by invoking the traditional authority of a tenant to control entry to the property and to exclude non-compliant visitors as trespassers. The Opinion concluded that a private party in such a position likely *could* prohibit guns in this way under Texas law. *Id.* at 3 n.2.

AG Opinion KP-0108 was recently withdrawn pending consideration of a related opinion request, RQ-0558-KP. But withdrawing the Opinion is not the same thing as repudiating its analysis or explaining why it was wrong, which the State has not attempted to do in this Court. If the AG Opinion was correct about the common-law authority of private parties who lease public property, then the privately operated State Fair may well have the authority to exclude handguns from the Fair, and this is the case *even if the State is completely right about the City of Dallas's obligations under section 411.209.* If the AG Opinion was wrong, then surely the party seeking a

---

law-abiding, gun-carrying public the misimpression that the courts have green-lighted their carriage of handguns at the Fair. To the extent the State advocates for such an ill-conceived half-measure, it does so unadvisedly.

3

result at odds with its own publicly stated opinion must at least explain why its opinion was wrong.

The State's filings obliquely suggest that there may be Second Amendment problems with the Fair's gun policy, but the suggestion is slight and indirect, and any such argument is not explained. Likewise, in its briefing to the court of appeals, the State alleged that the City of Dallas controls or influences the State Fair in various ways, insinuating that the State Fair's gun policy is actually the City's policy. Even accepting the State's factual allegations as true—which we are not obliged to do at this stage—the allegations that the City controls the Fair amount only to scattered and indeterminate financial connections between the entities, not the kind of control that would make the State Fair's decisions about guns imputable to the City. The State further alleged that the City appoints community members to the South Dallas/Fair Park Opportunity Fund Board, but the State failed to explain how that board is connected to the State Fair or how it may have influenced the Fair's gun policy, if at all.

While it is possible that future litigation could reveal that the City impermissibly controlled or influenced the State Fair's gun policy, it is not possible for an impartial court to conclude at this stage of the case that anything like that has happened. The factual landscape could certainly change as this litigation proceeds. But at this stage, every indication is that the State Fair's private board made its own decision to prohibit guns at this year's Fair. It should go without saying—though perhaps it cannot be said often enough—that a judge's role in this case is not to decide whether the State Fair made a wise decision. Our job,

4

instead, is to decide whether Texas law allowed the State Fair to make the decision for itself. The State declines to take a position on that essential question but nevertheless asks this Court for an injunction overriding the State Fair's decision. It should also go without saying that our answer, for now, must be no.

_____
James D. Blacklock
Justice

**OPINION FILED:** September 26, 2024

5